UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALYCIA JOHNS,<br><br>      Plaintiff,<br><br>  vs.<br><br>NELNET; SANTANDER CONSUMER USA; FIRST PREMIER BANK; LVNV FUNDING; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; INNOVIS DATA SOLUTIONS, INC. and TRANSUNION, LLC;<br><br>      Defendants. | Case No.: 2:22-cv-04791-KBH |

---

## PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HER FIRST PREMIER BANK'S OPPOSITION

---

On the brief:
Daniel Zemel, Esq.
Nicholas Linker, Esq.
Zemel Law LLC
660 Broadway
Paterson, New Jersey 07514
T: 862-227-3106
DZ@zemellawllc.com
**Attorney for Plaintiff**

**Table of Contents**

INTRODUCTION..............................................................................................................1

ARGUMENT...................................................................................................................1

    A.    WILLFULNESS ......................................................................................................1

        1.    *First Premier Admits That John's Recitation of Third Circuit Law is Correct: No Prior Guidance is Required in Order to Find Willful Violation*........................................................*1*

        2.    *First Premier Disregarded its Statutory Duties*..................................*4*

    B.    OVERLOOKED DAMAGES.......................................................................................5

        1.    *Emotional Distress Damages* .........................................................*5*

        2.    *Dr. Tosk*...............................................................................*10*

        3.    *Economic Damages*.................................................................*11*

    C.    THE COURT ERRED IN DISQUALIFYING HOLLON .........................................13

CONCLUSION ..............................................................................................................15

**INTRODUCTION**

Plaintiff, Alycia Johns, respectfully submits this Reply in further support of her Motion to Reconsider the Court's Order [ECF 222] and in response to Defendant First Premier Bank's ("First Premier") Opposition. [ECF 232].

**ARGUMENT**

**A. Willfulness**

1. First Premier Admits That John's Recitation of Third Circuit Law is Correct: No Prior Guidance is Required in Order to Find Willful Violation

Plaintiff's argument on willfulness for First Premier focused on the Court's finding that "there is no clear statutory or case law authority suggesting that specific steps are required for an investigation of familial fraud." [ECF 222], at 62. Based on this notion, and John's inability to point to direct law on this point, the Court held that there can be no willfulness, as a matter of law. *Id.* at 61-62. In her Reconsideration, Plaintiff argued that the Third Circuit has rejected a prior guidance requirement, and therefore the Court's holding, which hinges on the lack of prior guidance, warrants reconsideration. Surprisingly, on this point, First Premier concedes as much: "Plaintiff is correct that the absence of prior guidance does not categorically defeat willfulness." Opposition, at 6. Thus, it is abundantly clear that the Court should reconsider the issue of sending willfulness to a jury for determination on these facts.

Despite conceding that Plaintiff accurately stated the law of the Third Circuit, First Premier argues that Plaintiff has not identified new law, new evidence or clear error. Not so. A clear error is one "that is clear, obvious, and readily apparent." *Salgado v. United States*, 2025 U.S. Dist. LEXIS 101388, at *3 (D.N.J. May 28, 2025) (*quoting Brown v. Zickefoose*, 2011 U.S. Dist. LEXIS 121801, at *4 n.3 (D.N.J. Oct. 18, 2011)); *see also Assisted Living Associates of Moorestown,*

1

*L.L.C. v. Moorestown Twp.*, 996 F. Supp. 409, 442 (D.N.J. 1998) ("To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision."). The Court's error here is clear and obvious and overlooks controlling decisions. There does not have to be clear authority (or prior guidance) in order to find willfulness. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 722 (3d Cir. 2010) (dismissing TU's argument that a lack of Court guidance contributed to their failure to reasonably investigate).

Instead of confronting Plaintiff's first argument, (which it cannot do), First Premier seeks to present a different argument for why willfulness should be dismissed as a matter of law—one the Court did not provide. First Premier argues that Plaintiff's disputes were sparse and repetitive. But it ignores the fact that it had prior knowledge of familial fraud and ignored it. In fact, because First Premier received 16 disputes, and for each dispute First Premier only conducted the same investigation again and again, this very issue—whether repeating the same investigative steps in the face of numerous disputes is objectively unreasonable—is also an issue that should be sent to the jury. *Chaitoff v. Experian Info. Sols. Inc.*, 79 F.4th 800, 819 (7th Cir. 2023) (finding a second investigation that merely "repeated the same steps it took in response to [the] first dispute" could be willful).

Ironically, First Premier cites to the steps it took in each dispute. The very first step, "retrieving and reviewing account records, including application data" demonstrates why the question of willfulness should be sent to a jury. Here, despite receiving notice of familial fraud, First Premier's investigations overlooked the fact that the account was opened with someone else's email address, someone else's phone number, an authorized user named Sharlise Johns (evidently a family member other than Alycia Johns), and a false salary. If First Premier neglected this one

2

time, or even two, it may be considered negligent as a matter of law. But First Premier neglected to uncover these discrepancies, despite notice of familial fraud, **<u>sixteen times</u>**. All First Premier did was check if Johns' personal information on the ACDV matched the information in the account notes. Monsees Dep. [ECF 215-1], 43:9-17; 45:5-22; 111:4-113:10. On similar facts, the District Court of Virginia found such an investigation unreasonable as a matter of law. *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 851 (E.D. Va. 2017). Here, a reasonable juror could easily conclude that this type of oversight clearly presents an unjustifiable risk of harm warranting a willful finding.

Indeed, testimony from First Premier showed that it has no specific steps it takes for dealing with familial fraud disputes. Monsees Dep., 58:15; 69:10-13 (confirming that there is no policy for familial fraud). Nothing changes with First Premier's investigation based on the facts and it is a distinct lack of understanding of an identity fraud case that is damning. *Cf.* Monsees Dep., 82:1-8 ("It's what information we have is going to be investigated and we're going to try to see if that could be substantiated through what we have.") *with Simonson v. IQ Data Int'l, Inc.*, 698 F. Supp. 3d 1055, 1066 (W.D. Wisc. 2023) ("IQ Data doesn't point to any information it had – other than the disputed information itself – that supported a finding that the debt belonged to Simonson. That is relevant because the FCRA's duty to investigate is on the furnisher, not the consumer."); *see also Romero v. Monterey Fin. Servs., LLC,* 2021 U.S. Dist. LEXIS 15934, at *10 (S.D. Cal. Jan. 27, 2021) ("Indeed, the reasonableness of any investigation involving identity theft is likely to be a highly individualized and fact-intensive inquiry."). Accordingly, it is evident that First Premier's investigations were not robust, *as a matter of law*. A robust examination would have caught the email address, the authorized user, or the wrong number. or at least considered the police report.

In sum, First Premier's (and the Court's) focus on the disregard for the statute, but this is not the only avenue for a willfulness claim. *See Chaitoff*, at 819 ("willful violation is one

3

committed in 'reckless disregard of [its] statutory duty' . . . . Reckless conduct is that which creates a risk substantially greater than that necessary to render the conduct negligent."). Here, a reasonable juror could conclude that First Premier's limited investigations created an unjustifiable risk of harm. *Dixon-Rollins v. Experian Info. Solutions, Inc.*, 753 F. Supp. 2d 452, 462 (E.D. Pa. 2010) ("[w]hether an act was done with knowing or reckless disregard for another's rights remains a fact-intensive question."); *Lara v. Experian Info. Sols., Inc.*, 625 F. Supp. 3d 1062, 1074 (S.D. Cal. 2022) ("a jury could conclude both of [the furnisher's] investigations where it merely reviewed its own file in response to Plaintiff's disputes based on identity theft were in reckless disregard to its statutory duty—a willful violation of the statute).

2. First Premier Disregarded its Statutory Duties

Another reason willfulness should be presented to a jury is because First Premier's handling of Johns' disputes was not consistent with their statutory obligations. 15 U.S.C. § 1681s-2(6)(B) clearly states that First Premier may not furnish the ID theft disputed information that "to any consumer reporting agency, unless [First Premier] subsequently knows or is informed by the consumer that the information is correct." 15 U.S.C. § 1681s-2(6)(B)(emphasis added).

Here, First Premier completely disregarded these obligations in conscious disregard of its statutory duties. Notably, in response, First Premier never argues it *knew* the charges were hers or that Johns told them the information was correct. Instead, First Premier states that these provisions do not apply because they only relate to credit information that "was previously blocked or determined to be the result of identity theft." Opposition at 7. First Premier's objectively unreasonable reading of the statute is dead wrong. The plain language of 15 U.S.C. § 1681s-2(6)(B) does not provide any such limitation with regard to this statutory duty that is specifically required of First Premier. Any reading to the contrary is simply objectively unreasonable.

4

For this reason, too, the Court should reconsider whether willfulness should be sent to a jury.

## B. Overlooked Damages

Within Plaintiff's Reconsideration, Plaintiff pointed to specific evidence which the Court either failed to address, or made a mistake of material fact as to the timing. For instance, the Court completely failed to address Dr. Tosk's expert opinion. The Court also completely failed to address the Discover denial. Concerning both her job applications and the fact that she refrained from applying for credit, the Court applied the incorrect time of injury. These errors and omissions are indisputable based on the Opinion—the Court either did not discuss this evidence, or failed to address the proper timeline. Nonetheless, First Premier argues that these facts were not overlooked. Rather, according to First Premier, the Court made an independent determination on why these damages which Plaintiff highlights were not addressed, addressed incorrectly, or simply did not apply in this case. According to First Premier, it is completely logical for the Court to deny specific components of injury, based on a very detailed legal reasoning, all the while omitting any mention of this holding or reasoning *anywhere* in a 70-page opinion. With this approach, First Premier seeks to fill in the gaps of exactly "what the Court was thinking all along," by presenting its own analysis.[1] The premise's absurdity is perhaps the strongest argument to find reconsideration warranted.

### 1. Emotional Distress Damages

First Premier twists the Court's Opinion in dismissing emotional damages to a different theory. While the Court's concern in the Opinion is clearly regarding corroboration of Plaintiff's

---

[1] Notably, First Premier's version of the Court's absent analysis differs from what the other Defendants believed it to be based on their Oppositions. *See, e.g.*, Equifax Opp, at 4 (finding the Court dismissed economic damages based on the statute of limitations); TU Opp, at 7-8 (arguing damages were too speculative).

5

testimony, Defendants attempt to frame it as a causation issue. *Compare* [ECF 222] at 65 ("Johns **only points to her own testimony** that each Defendant was a significant factor in her harms. Such conclusory testimony is insufficient to create an issue of material fact at summary judgment.") (emphasis added) *with* [ECF 232], at 9 ("Plaintiff Presented no Causal Link to Her Alleged Emotional Distress."). This is clearly an incorrect interpretation of the Court's Opinion. The Court made its reasoning abundantly clear: Plaintiff's testimony was "conclusory" and therefore insufficient to create a material issue of fact alone. [ECF 222] at 65. Indeed, while Plaintiff's Reconsideration made clear that the testimony provided by Plaintiff *was not* conclusory, neither First Premier, nor any other Defendant, rebuts this precise fact.

In its papers, First Premier shifts the Court's holding to instead posit that the FCRA has a "defendant-specific causation requirement," based, inexplicably, on the Court's statement: "Such conclusory testimony is insufficient to create an issue of material fact at summary judgment." For its causation proposition, First Premier cites "Circuit authority." But the Circuit it cites is the Fifth Circuit's opinion, which has been expressly rejected by the Third Circuit. Still, First Premier gets Fifth Circuit law wrong.

The theory of the Fifth Circuit is that where the evidence is unclear about which of two defendants caused the harm, where only one can be the cause, then a plaintiff must identify the individual defendant. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 370 (5th Cir. 2001). Defendant's brief actually mis-cites *Cousin*. There, it was clear that the denial was the result of an Equifax report, not a TransUnion report, and the resulting emotional damages were therefore not likely caused by TransUnion. *Id*. Contrary to First Premier's assertions, there was no confusion on

6

behalf of the court and no finding that damages failed "where there were reports from multiple agencies at issue." [ECF 232], at 9-10.[2]

Notably, the Third Circuit in *Cortez* explicitly rejected the Fifth Circuit's standard established in *Cousin*. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 720 (3d Cir. 2010) ("we have not adopted, and now refuse to adopt, the Fifth Circuit's standard"). The Third Circuit's decision in *Philbin* is instructive. 101 F.3d at 966. In *Philbin*, there were two credit reporting agencies with inaccurate reports, the Circuit specifically rejected Defendant's argument here. "We note also that the district court's language might be understood as imposing a burden on a FCRA plaintiff of proving that the inaccurate information was the sole cause of the denial of credit. We reject such a view as inconsistent with traditional notions of tort law and the reality of human decision-making." *Id.* at 969. In other words, Plaintiff does not have to prove that a specific defendant was the sole cause of Plaintiff's emotional distress. *Id.* (*citing* Prosser & Keeton § 41, at 268 ("it follows that [defendant] will not be absolved from liability merely because other causes have contributed to the result . . . ."). Plaintiff must only present sufficient evidence for the jury to infer that each defendant was a substantial factor in bringing about the damages and there is no need for the specifics that Defendant urges under Third Circuit law.[3] On this point, the case law is legion.[4] *See*

---

[2] The proposition of *Cousin*, in the context of causation can make sense in certain instances, as Plaintiff pointed out here in her moving motion. For instance, Plaintiff readily acknowledges that neither Equifax nor TransUnion can be held responsible for the Discover denial given that Discover based its decision solely based on an Experian credit report. Plaintiff's Motion for Reconsideration, at 6.

[3] Defendant cites two further cases in support of its Defendant-specific causation requirement. First, to *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). But this case says nothing of this proposition. *SimmsParris* deals with whether the CRA that provides dispute notice to a data furnisher must be one which the data furnisher provides credit information to. Second, Defendant cites to *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996) which specifically holds that defendant specific causation is not required; only a substantial factor is needed. In sum, Defendant has failed to cite a single court that has required defendant specific causation, such that where there are multiple defendants in a credit case, a plaintiff must distinguish between what harms each defendant caused.

[4] *Barrepski v. Capital One Bank (U.S.A.) N.A.*, 2014 U.S. Dist. LEXIS 29665, at *20 (D. Mass. 2014) (FCRA plaintiff[s are] required to show that the erroneous entry was a substantial factor in bringing about the denial of credit, [they are] not required to eliminate the possibility that other factors may have also influenced the credit denial.); *Ruffin-Thompkins v. Experian Info. Sys., Inc.*, 2003 U.S. Dist. LEXIS 23647, at *16 (N.D. Ill. Dec. 31, 2003), *aff'd*,

7

*also Laura v. Experian Info. Sols., Inc.*, 2022 U.S. Dist. LEXIS 48445, at *12 (N.D. Ill. Mar. 18, 2022)(denying Experian's argument that the failure of a plaintiff to identify it as the cause, as opposed to the other credit agencies, where a denial letter stated that the denial was based "in whole or in part" on information obtained from all three CRAs); *Ramones v. AR Res., Inc.*, 2022 U.S. Dist. LEXIS 65884, at *20-21 (S.D. Fla. Apr. 8, 2022)(Plaintiff's testimony regarding denials and the continued verification of the multiple inaccurate accounts was sufficient); *Sampson v. Equifax Information Services, LLC*, 2005 U.S. Dist. LEXIS 19240, at *9-11, n.3 (S.D. Ga. Aug. 29, 2005) (Plaintiff's sworn statement that she suffered emotional distress was sufficient even though her credit file contained numerous derogatory entries).

Plaintiff's evidence on emotional distress damages has satisfied that burden here. Plaintiff specifically testified as to the role that *each* defendant played, and that in her view each defendant is equally liable. Motion for Reconsideration, at 4-5. Here, said testimony included the impact that First Premier had on her, emotionally. *Id.* at 5. Plaintiff's expert witness similarly provided his opinion that each of the Defendants was a contributing factor for Plaintiff's emotional distress. *Id.* at 3. Under Third Circuit law, this evidence satisfies her burden. Thus, First Premier's theory of the Court's analysis is wrong in any event.

First Premier also argues that *Cortez* held that damages must be established first before a jury weighs a plaintiff's testimony. *See* [ECF 232], p. 11. But this is not present in *Cortez*. *Cortez* fully supports Plaintiff's position. There is no running from *Cortez*'s clear finding that corroboration is not needed to establish actual damages, and that a Plaintiff's testimony is

---

422 F.3d 603 (7th Cir. 2005); *Taylor v. Screening Reports, Inc.*, 2015 U.S. Dist. LEXIS 86262, at *20 (N.D. Ill. July 2, 2015); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1161 (11th Cir. 1991); *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 54 (D.C.C. 1984) ("[A] trier of fact could reasonably conclude that [defendant] denied [plaintiff] membership at least in part because of the adverse credit report, and summary judgment was inappropriate."); *Fahey v. Experian Info. Solutions, Inc.*, 571 F Supp. 2d 1082, 1089 (E.D. Mo. 2008).

sufficient. And while First Premier argues that *Owoyemi v. Credit Corp. Sols. Inc*., 677 F. Supp. 3d 285 (S.D.N.Y. 2023), and *Suluki v. Credit One Bank, N.A*., 666 F. Supp. 3d 403 (S.D.N.Y. 2023) are red herrings because the Court's analysis does not turn on those cases, the language in the Opinion is clear: a plaintiff "generally cannot rely solely on subjective testimony." [ECF 222], at 63. This is *not* the Third Circuit's law. *See also Lupyan v. Corinthian Colleges, Inc.*, 761 F. 3d 314, 320 (3d Cir. 2014) (a "single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment."). First Premier's attempt to distinguish *Lupyan* as a case not dealing with the FCRA falls flat. Again, the FCRA does not have a separate standard for weighing damages on summary judgment in FCRA cases, thus *Lupyan* clearly applies.

Accordingly, as previously articulated, Ms. John's testimony is directly consistent with the standard laid out in *Gagliardo v. Connaught Labs., Inc*., 311 F.3d 565, 573 (3d Cir. 2002)—a reasonable probability that emotional distress damage occurred. *Gagliardo* does not demand corroboration. *See Holmes v. Am. HomePatient, Inc.*, 2024 U.S. Dist. LEXIS 160240, at \*33 (M.D. Pa. Sept. 6, 2024) ("But nothing in this opinion [*Gagliardo*] indicates that this type of evidence is required to prove a claim of emotional damages."). Here, where Plaintiff's disputes were repeatedly denied, and she suffered adverse credit and rental consequences, it is clear that there is a reasonable probability that these acts caused emotional distress and that Plaintiff's testimony was not conclusory. *See Philbin*, at 963 n. 3 ("Given the amorphous nature of the damages at issue, we do not consider it necessary that Philbin state his damages with any greater degree of particularity."); *see also Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 506 (4th Cir. 2007) ("as a victim of identity theft, [plaintiff] suffered the systematic manipulation of her personal

information, which, despite her best efforts, [defendant] failed to correct over a protracted period of time.").

    2.  <u>Dr. Tosk</u>

Like the other Defendants, First Premier argues that the Court did not overlook Dr. Tosk's opinion. First Premier argues that the decision not to separately address Dr. Tosk does not constitute clear error or manifest injustice. But the Court's finding on emotional damages was clear: "Johns **only** points to her own testimony." [ECF 222], at 64. When First Premier asserts that the question is whether the opinion contains sufficient reasoning to permit meaningful review, it is clear here that the Court's opinion is factually wrong about the evidentiary record and thus, cannot contain sufficient reasoning.

Sensing this, First Premier goes on to argue that Dr. Tosk's report does not isolate First Premier's conduct from the other defendants' conduct, nor tie any specific symptom to First Premier. This argument suffers from the same fatal flaw that is contained in its efforts to dismiss Plaintiff's testimony and causation in general: *nothing* in the law requires that a plaintiff must prove that a specific harm is caused from only one defendant, as opposed to the lower substantial factor bar. Defendant provides no case in support of such a proposition, and again, the citation to *Cousin* is in error because the damages were denied as to Trans Union where it was clear the credit denial was attributable to Equifax, not because there was confusion on the source of the report and therefore the plaintiff could not prove sole causation.

At most, First Premier intends a back-door *Daubert* motion against Dr. Tosk without having actually filed a motion. This is impermissible. To the extent First Premier argues that Dr. Tosk's opinion has a weakness or is contradicted, this is quintessentially a question of fact that the Court cannot decide. As such, it is clear that First Premier has no valid response to the fact that the

10

Court erroneously omitted Dr. Tosk's report from its findings. Notably, while Defendant asserts that Dr. Tosk's opinion is *only* based on his clinical opinion and expert analysis without "other evidence," Defendant is wrong. Dr. Tosk specifically noted that he reviewed the P&G records, which do indeed mention identity theft as a psychological abuse. Tosk report, p 1; [ECF 131-21], at 6.[5] Under binding law, Dr. Tosk's methodology is sufficient, even though he provided his opinion in the context of litigation. *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 762 (3d Cir. 1994); *Colon v. Kinnel*, 2023 U.S. Dist. LEXIS 27115, at *11 (E.D. Pa. Feb. 17, 2023) (refusing to strike a psychologist expert relying on medical examination for expert opinion).

      3.  <u>Economic Damages</u>

*Discover denial*. The Court's Opinion did not discuss the Discover denial at all. Thus, expectedly, First Premier's argument is that the letter does not provide "defendant specific" causation.  To meet its standards, First Premier insists that Plaintiff would need testimony from Discover or an expert specifically identifying First Premier as contributing to the denial. But as stated above, this is not the standard. The Third Circuit is very clear that a plaintiff need only present sufficient evidence for a jury to *infer* that a defendant was a substantial factor in bringing about the damages. *Philbin*, 101 F.3d at 966.

Courts routinely deny summary judgment where a jury could infer damages based on the reason code in a denial letter. In *Chaitoff*, the creditor's denial letter listed "serious delinquency" as one of four factors which formed the basis for the credit denial. *Chaitoff v. Ocwen Loan Servicing LLC,* 2025 U.S. Dist. LEXIS 53706, at *17-18 (N.D. Ill. Mar. 24, 2025). On these facts, the Court could not conclude that no juror would find the defendant's delinquent reporting to be a

---

[5] Dr. Tosk also testified that the treating therapist addressed credit issues as a stressor in her life. Tosk Deposition 146:17-147:10, attached hereto as Exhibit A. Plaintiff recognizes that the deposition transcript is not part of the record. Plaintiff attaches it here only to rebut Defendant's unsupported assertion, which was not raised anywhere on summary judgment before.

11

causal factor in the denial. *Id*. Similarly, in *Laura*, the Capital One denial letter stated that the denial was based "in whole or in part" on information obtained from all three CRAs. 2022 U.S. Dist. LEXIS 48445, at *12. When Experian moved for summary judgment arguing the Plaintiff could not provide "defendant-specific" causation, the Court held that a reasonable juror could conclude that Experian's reporting played a causal factor and denied its motion. *Id*.; *see also Ramones*, at *16. The same analysis applies in the instant case.

Within the Discover denial, five reasons are provided as having an impact on Plaintiff's credit application. The fourth reason code is: number of accounts delinquency. [ECF 131-20]. Because First Premier is one of the delinquent accounts, a reasonable juror could easily infer that First Premier's conduct is a substantial factor of the denial. Taking all facts in light favoring the non-movant, the Court would have found that the Discover denial was sufficient to create a genuine issue of material fact on the issue of damages.

*Refraining from applying for credit*. First Premier argues that the "Court did not reject" these damages, but found that "Plaintiff failed to satisfy [the] precedent because the record did not link her decision not to seek credit to First Premier's conduct." [ECF 232], at 14. For this imaginary retelling of the Court's opinion, First Premier cites generally to the Opinion, at 62-66. This statement is utterly false. Nowhere in the Court's opinion, let alone in pages 62-66, does the Court mention refraining from applying for credit. The Court does mention that "John's asserted challenges with her job search predate" the statute of limitations (which is factually wrong and a point that First Premier does not rebut), but it does not mention refraining from applying for credit.

Even so, the same problem with First Premier's argument emerges. Plaintiff does not have to specifically identify First Premier as the sole cause of her refrainment. The FCRA does not demand that a defendant be the sole cause of damages.

12

The same analysis applies to the damages related to refraining from applying for job applications. Reconsideration is warranted on this ground as well.

## C. The Court Erred in Disqualifying Hollon

Finally, in regards to the *Daubert* motion, First Premier merely reiterates the Court's decision. First Premier does not address Plaintiff's point that the Court erred by discounting Hollon's reliance on his experience at Experian as a valid basis for his opinions and failing to acknowledge the FCRA standard for investigations. Accordingly, First Premier concedes these points. *See Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 477-78 (D. Del. 2021) (when party does not respond, "it is considered to have conceded the issue.").[6]

In rubber-stamping the Court's opinion, First Premier argues that Hollon's opinion as to whether Johns is the victim of identity theft is independently disqualifying. But Hollon does not make a professional opinion on this matter at all. Hollon's expertise is in whether the investigations were reasonable, and he is not put forth as an expert in the matter of whether there was fraud in the first place. Nowhere in Plaintiff's summary judgment papers does she rely on Hollon to prove that question of inaccuracy.

First Premier does present a new argument: that Hollon's report is not sufficient because it is not sworn under penalty of perjury. Preliminarily, First Premier cannot assert this argument at this time. This is a new argument on a motion for reconsideration, which every other party and court will agree is not permissible. *See Salveson v. JP Morgan Case & Co.*, 166 F. Supp. 3d 242,

---

[6] Aside from not addressing Plaintiff's points, First Premier adds an argument that is not present in the Court's opinion. First Premier argues that Hollon's opinion regarding its investigation conflicts with the documented process. Even though the Court did not countenance this argument, First Premier is wrong. Hollon's opinion of First Premier's basic investigation is indeed based solely on his review of the testimony and the documents. Hollon Report, p. 141 ("First Premier admitted that the information that Ms. Johns' parents were the fraudsters, and would therefore have full access to her identifying information, was not substantial enough for First Premier to look into it more than matching to the addresses on the demographic reports and its own internal records.").

13

248 (E.D.N.Y. 2016) ("A motion for reconsideration is [not] . . . an opportunity for making new arguments that could have previously been made.") (citation omitted).

But even examining the merits of First Premier's argument, it is lacking. While First Premier is generally right, a Court may properly consider an expert report at summary judgment if the expert reaffirmed opinions stated in the report during deposition. *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1368 (M.D. Ga. 2010) ("Mentor also does not dispute that the expert reports were exhibits to the experts' depositions. . . . Mentor does not contend that any of Plaintiffs' experts retracted or disavowed their opinions. Under these circumstances, the Court concludes that it may properly consider the unsworn expert reports.") (*citing Maytag Corp. v. Electrolux Home Prods., Inc.*, 448 F. Supp. 2d 1034, 1064-65 (N.D. Iowa 2006) (finding that unsworn expert reports are properly considered at summary judgment if expert reaffirmed opinions stated in unsworn report during deposition) *and Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1300, 1310 n. 6 (M.D. Fla. 2006) (concluding that unsworn expert report was properly before court because it was marked as exhibit to expert's deposition and identified by the expert)). Here, it is undisputed that Hollon incorporated and reiterated his opinions in two days of depositions, and that the report was attached as an exhibit and Hollon was questioned about it throughout his deposition. *See, e.g.*, [ECF 138-5], 13:10-12 (confirming that the report was marked as Exhibit 3). The transcripts of the depositions were submitted to the Court and portions of it were cited to by all the parties, even the Court. [ECF 222], at 31. Thus, under the law, Hollon's report (and his sworn deposition testimony) can be considered at summary judgment.

Moreover, First Premier misses the point. The argument here is not whether the report can be considered at summary judgment, Plaintiff's Reconsideration concerns whether Hollon should be excluded under a *Daubert* analysis.

## CONCLUSION

Based on the above, Plaintiff's motion for reconsideration should be granted.

Dated: June 2, 2026.

Respectfully Submitted,

/s/ Nicholas Linker
Nicholas Linker, Esq.
Daniel Zemel, Esq.
Zemel Law LLC
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 2d day of June, 2026 a true and correct copy of the foregoing document was sent to all counsel of record via the Court's ECF system.

 s/ Nicholas Linker
Nicholas Linker, Esq.

15