UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALYCIA JOHNS, | ) | Case No.: 2:22-cv-04791-KBH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NELNET; SANTANDER CONSUMER USA; | ) | |
| FIRST PREMIER BANK; LVNV FUNDING; | ) | |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC; EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC.; INNOVIS DATA | ) | |
| SOLUTIONS, INC. and TRANSUNION, | ) | |
| LLC; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HER MOTION FOR RECONSIDERATION AND IN RESPONSE TO DEFENDANT NELNET'S OPPOSITION

---

On the brief:
Daniel Zemel, Esq.
Nicholas Linker, Esq.
Zemel Law LLC
660 Broadway
Paterson, New Jersey 07514
T: 862-227-3106
DZ@zemellawllc.com
**Attorney for Plaintiff**

**Table of Contents**

INTRODUCTION.................................................................................................. 1

ARGUMENT ....................................................................................................... 1

   A.  NELNET'S NEGLIGENCE CLAIM.................................................................. 1

   B.  OVERLOOKED DAMAGES ............................................................................ 4

      1.  *Emotional Damages* ........................................................................ 4

      2.  *Economic Damages*........................................................................ 7

   C.  THE COURT ERRED IN DISQUALIFYING HOLLON ....................................... 7

CONCLUSION ................................................................................................... 10

**INTRODUCTION**

Plaintiff Alycia Johns respectfully submits this Reply in further support of her Motion for Reconsideration and in direct response to Defendant Nelnet Servicing, LLC's ("Nelnet") Opposition. In an effort to sustain a partially flawed Summary Judgment Order, Nelnet's Opposition fundamentally misstates the governing legal standards and urges this Court to view the evidentiary record through a hyper-technical lens that completely strips Plaintiff of her right to favorable inferences. Plaintiff's grounds for reconsideration regarding Nelnet are precisely targeted: the record contains overwhelming testimonial and documentary evidence from which a reasonable jury could infer that Nelnet maintained prior, systemic knowledge of the familial fraud rendering its boilerplate "investigations" to be the subject of jury determination.

Unable to square the actual record with the Court's finding that Plaintiff's damages claims were merely "conclusory," Nelnet mounts an alternative defense nowhere to be found in the Court's original Memorandum. Nelnet goes so far as to ask this Court to retroactively establish an unprecedented legal rule: that a board-certified psychiatrist's clinical diagnosis is legally unreliable simply because it incorporates a patient's self-reported medical history. Furthermore, Nelnet completely ignores the reality that the Court's summary judgment analysis entirely omitted any mention of Dr. Tosk's expert medical report, or his subsequent affidavit. Because material questions of fact abound regarding Nelnet's notice, the systemic investigative failures of its automated dispute processes, and the resulting multi-layered trauma inflicted upon Plaintiff, reconsideration is warranted.

**ARGUMENT**

**A. Nelnet's Negligence Claim**

Plaintiff's argument regarding the Nelnet claim is focused on the Opinion's one line that Plaintiff did not submit evidentiary support that she called Nelnet and told them she was a victim

1

of familial fraud. [ECF 222], at 50. Nelnet counters that nothing in the deposition testimony submitted by Plaintiff supports the fact that Plaintiff testified what she told Nelnet.

Defendant fails to rebut the most critical piece of evidence submitted, which the Court also failed to apprehend on summary judgment. **Defendant's own corporate representative admitted they had knowledge of the ID theft as early February 8, 2021.** Mr. Latimer confirmed that Nelnet received Plaintiff's documentation as of 2/8/2021. Latimer Dep. 84:13-85:23 ("clearly Nelnet did receive an ID theft package"). And indeed, the record clearly shows that the ID theft package asked Plaintiff many questions about the details of the fraud—and Plaintiff provided the narrative in clear detail.[1] Given the Court missed this critical fact, and Nelnet failed to rebut it, reconsideration is warranted on this fact alone.

Even considering Nelnet's argument that Plaintiff's testimony is unsupported by the documents (which is not true), this would not be disqualifying. *See Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 852 n. 51 (E.D. Va. 2017). In *Wood*, the court rejected the argument that evidence that a plaintiff called a furnisher needs to be corroborated by the furnisher's documents and that there was a genuine dispute as to a material fact.

Nonetheless, Nelnet focuses its opposition on the technicality thatthe deposition testimony cited does not *explicitly* state the words "I called Nelnet and told them about the familial fraud." *See, e.g.*, Nelnet's Opp [ECF 231-1], at 4 ("Plaintiff's generic recollections . . . are insufficient to support Plaintiff's argument that 'she did tell' Nelnet of the familial nature of the fraud . . . ."). But the magic sentence that Nelnet seeks is not required to defeat summary judgment. The Court, on summary judgment, must take all inferences in favor of the non-movant (in this case, Plaintiff). *See Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) ("We give the nonmoving

---

[1] *See, e.g.*, Exhibit A (PL103, 105-07).

2

party the benefit of all reasonable inferences."). This means that general testimony *can* support an inference. Plaintiff's testimony, which fairly provides that Plaintiff submitted "multiple pieces of information" and her "documentation multiple different ways," is sufficient for a jury to infer that she informed Nelnet in multiple different ways about the familial nature of the fraud. Johns Dep. 420:6-18. Plaintiff's numerous deposition citations support this. *Id.* at 463:5-11 ("I spoke to multiple representatives, I sent in documents multiple times through multiple [] different mediums"); 467:3-468:8 ("I'll do my best to give you everything that I have, which I did."); 476:6-22 ("I provided documentation through other mediums that was asked of me by Nelnet *multiple times*.").

Further, the combined testimony above with context lends further support. Plaintiff also testified that she provided "the information regarding my adoptive parents, their information." *Id.* at 421:20-422:10. Nelnet attempts to quibble with the testimony by being technical. It argues that this was only in reference to Plaintiff's written disputes to the CRAs. But not only is this incorrect (these communications were separate from Plaintiff's CRA disputes, and submitted multiple times before the last CRA dispute), but it completely ignores the standard above. This testimony, combined with the prior testimony, paints a fair inference that she provided information regarding her parents "multiple different ways." Nelnet also insists that this information had to be conveyed with Plaintiff's formal written disputes, but that is not true at all. The question is whether Nelnet had knowledge of the familial nature of the fraud *before* her last dispute, in any manner. It is unclear why Nelnet is focused on phone calls, when the point is, and the evidence shows, that Nelnet was informed through multiple mediums, calls, emails, and document submissions.

In sum, the testimony, as a whole points to Plaintiff providing Nelnet with information about her adoptive parents through multiple mediums, including phone calls, and documents prior

to the last CRA dispute Nelnet received. While no one piece of testimony says the magic words that Nelnet wants, there is sufficient testimonial evidence, taking all inferences in Plaintiff's favor, to counter the Court's finding. Applying the summary judgment standard, Plaintiff's ample testimony, and Nelnet's own testimony indicates that there is sufficient evidence for a jury to infer Nelnet had prior notice. Reconsideration is therefore warranted on the record evidence here.

**B.  Overlooked Damages**

1.  Emotional Damages

Nelnet argues that "[n]owhere in this Court's discussion of Plaintiff's purported emotional distress damages did the Court actually conclude that Plaintiff's testimony was insufficient solely on the basis that it was the only evidence of emotional distress—instead, the Court determined that the testimony was 'conclusory' and therefore 'insufficient to create an issue of material fact at summary judgment.'" [231-1], at 12 (*citing* [ECF 222] at 65). The problem is the same; the Court found that the testimony was conclusory *because* it was not supported by corroboration. *See* [ECF 222], at 65 ("emotional distress damages must be supported by evidence of 'genuine injury' which 'may be evidenced by one's conduct and observed by others' . . . **Johns only points to her own testimony** that each Defendant was a significant factor in her harms.") (citation omitted).

It is clear that the Court required some evidence besides Johns' testimony. And as argued repeatedly, there are two problems with this finding. First, there was other evidence in the form of Dr. Tosk's report. And Second, Johns' testimony was not conclusory merely because it lacked corroboration.

As to Dr. Tosk, Nelnet complains that the report relies on Plaintiff's testimony and descriptions of her emotional harms, and therefore, is insufficient. This argument necessarily fails. First, it is a backdoor *Daubert* motion which the Court cannot entertain. Second, Dr. Tosk did not

4

only rely on Plaintiff's testimony; he clearly cited to and relied on the ongoing clinical records of Ms. Johns', which document the credit issue as a stressor in her life. Tosk report, p 1; [ECF 131-21], at 6. Third, Dr. Tosk conducted his own psychiatric testing, consistent with the DSM 5 to reach his conclusions.

Nelnet nonetheless makes the illogical argument that a physician's opinion cannot be reliable when it is based on the self-reporting of the patient, especially when prepared for litigation. Nelnet appears oblivious to the fact that "in clinical medicine, the methodology of physical examination and self-reported medical history […] is generally appropriate." *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020 (7th Cir. 2000). The Third Circuit has addressed this issue in detail. To begin with, there is no ground for dismissing an expert report based on the fact that it was prepared just for litigation purposes. *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 762 (3d Cir. 1994). Further, where a physician relies on both a review of the patient's medical records *and* conducts their own medical exam of the patient, a court cannot dismiss the opinion. *Id.*[2]; *Colon v. Kinnel*, 2023 U.S. Dist. LEXIS 27115, at *11 (E.D. Pa. Feb. 17, 2023) (refusing to strike a psychologist expert relying on medical examination for expert opinion); *Heredia-Caines v. Lehigh Valley Hosp., Inc.*, 2022 U.S. Dist. LEXIS 15569, at *7 (E.D. Pa. Jan. 27, 2022) (same).

And Nelnet still does not, and cannot, escape the fact that the Court simply omitted the report altogether. The point of the reconsideration is that the Court overlooked evidence. Unable to combat this point, Nelnet cannot excuse the Court's omission with an alternative justification that is not present in the Court's opinion at all.

---

[2] The instant case presents no commonality to *Hillburn v. Murata Electronics.*, relied on by Nelnet, because here Dr. Tosk relied on medical notes, conducted his own exam of the patient, and provided a detailed basis for his conclusions, and how he reached them.

As to Johns' testimony, Nelnet only argues that it must contain descriptions of particular events and points in time. But the absence of these particulars does not make testimony conclusory. It is the absence of *any* facts, and only opinions or conclusions, that makes something conclusory. *See Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) (finding affidavit conclusory because it failed to show any personal knowledge and was based on exhibits and conjecture); *see also Drexel v. Union Prescription Ctrs.*, 582 F.2d 781, 789-90 (3d Cir. 1978) (affidavits contained conclusions like a party acted as an independent contractor and "never controlled nor had the right to control" the conduct of another); *Lester v. Wells Fargo Bank, N.A.*, 805 Fed. Appx. 288, 292 (5th Cir. 2020) ("Determining whether a particular affidavit is vague or conclusory is necessarily a fact-bound analysis that will depend on the facts and claims at issue. Broad legal or factual assertions in an affidavit that are unsupported by specific facts are generally held to be conclusory.") (collecting examples). Here, Plaintiff's emotional damages testimony was rife with specific facts and examples of her distress. The fact that the examples of distress were reoccurring means that specific times and instances are unnecessary. *See* Johns Dep. 273:5-276:10 [ECF 139-12] ("anxiety of having to relive this and retell the story[3] . . . stressing about what is on my credit," humiliation from "having to explain that every time I try to do something," "bouts of depression, nights where I just wouldn't sleep, obsessing over trying to find answers," etc.). There is no law, and Defendant points to none, to suggest that the difference between conclusory testimony and non-conclusory testimony is that the details of facts must be tethered to specific dates and specific creditors. Nelnet goes too far.

---

[3] Nelnet argues that the anxiety of reliving and retelling the story relates to the litigation. [ECF 231-1], at 12. This is not true. Plaintiff was testifying about constantly reliving the story every time she thinks about applying for credit or a job and having to explain it to employers and creditors. This is clear in the testimony. Nor is it fair to say that the civil suit is of Plaintiff's making. As shown in the Court's opinion, Defendants bear liability for the suit.

2. Economic Damages

Likewise, instead of acknowledging that the Court did indeed fail to mention certain economic damages, like the Discover denial and refraining from applying for credit, Nelnet must create some other defense, not present in the Court's opinion. Here, Nelnet repeats the argument that there is a lack of detail regarding these damages. But once again, reoccurring damages do not require the level of detail that Nelnet desires. *See Wood*, 277 F. Supp. 3d at 845 ("Although [plaintiff] could not identify specific dates on which, or companies by which, he was denied credit . . . such proof is not required for Wood to survive . . . summary judgment."). If a consumer is refraining generally from applying for credit over a specified period due to bad credit, then a consumer obviously does not have specific "credit products" from specific sources. That implies an unnecessary step in the credit process: that a consumer must first *look* for credit, then refrain from applying for credit at the last minute. Nelnet cites no support for this proposition, nor could it.

## C. The Court Erred in Disqualifying Hollon

Finally, regardless of whether reliability should be determined by a Court or should be left to cross-examination, the simple fact is that the Court erred when it said Hollon was not reliable.[4] In the Third Circuit and under Rule 702, for non-scientific expert evidence, the "relevant reliability concerns may focus upon personal knowledge or experience." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2001); Fed. R. Civ. 702 ("an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a

---

[4] *But see* Committee Notes on the 2023 Amendment to Rule 702 ("Some challenges to expert testimony will raise matters of weight rather than admissibility even under the Rule 104(a) standard. For example, if the court finds it more like than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility."). Under this rule, minor factual errors in Hollon's report are examples of matters of weight because it is undeniable, or more likely than not, that Hollon has a sufficient basis in the credit industry to support his opinions.

7

great deal of reliable expert testimony."). Hollon has the requisite personal knowledge and experience, and relied on this in reaching his conclusions, which the Court overlooked.

Nelnet argues that the Court did not overlook Hollon's reliance on his extensive experience at Experian, but in fact considered it "in addition" to its discussion of "*what* in his experience skills or knowledge [he] draws upon in reaching that conclusion." [ECF 222], at 30. The "*what*" in this case is Hollon's experience at Experian conducting thousands of fraud investigations similar to the issues at stake in this case. This is clearly laid out in Hollon's expert report. Under "Qualifications and Methodology," Hollon outlines that he uses "specialized knowledge, skills, experiences, training, and education" as a methodology, which includes "specialized training involving fraud (identity theft) disputes" with Experian and "extensive knowledge of other Consumer Reporting Agencies' (CRA) and Data Furnishers' credit dispute operations" through publications, case law, deposition transcripts, and company manuals. *See* Hollon Report, p. 2-3. He repeatedly anchors his opinions through the combination of the evidence with his experience and knowledge. *See, e.g.*, Hollon Report, p. 41, 44, 46 ("based on the evidence provided in this case, plus my experience and knowledge"); *see also* p. 158 ("In my 18 plus years' experience working in the consumer reporting industry, I have seen tens of thousands of investigations supposedly conducted by data furnishers where the data furnishers did not reasonably investigate."). Other courts have easily found this methodology sufficient when considering Mr. Hollon's methodology. *See Valenzuela v. Equifax Info. Servs. LLC*, 2015 U.S. Dist. LEXIS 151064, at *7 (D. Ariz. Nov. 6, 2015) ("His testimony is based on his experience and research in FCRA matters. Thus, his method is simply an application of his experience with and understanding of the FCRA and the credit reporting industry to the facts at hand. Although his methods are not meticulously detailed for every conclusion, they can be understood and are reliable.").

8

With regard to the FCRA standard, Nelnet does nothing more than blandly state that the Court was "absolutely correct" without any support. Ideally, Defendants (including Nelnet) would support the Court's decision by stating an FCRA standard *different* than what Hollon expressed. They cannot, and Defendants' own testimony supports Hollon's expert opinion. The Court simply got it wrong when it found that Hollon had not appropriately identified the industry standard, or that he was required to do so

Lastly, Nelnet contends that Hollon's opinion on damages relied only on "credit denial letters and some inquiries on her credit reports" but did not calculate the impact of the disputed information on Plaintiff's creditworthiness. [ECF 231-1], at 16-17. But these are exactly the damages here that require Hollon's expertise. The jury needs someone to explain to them what the credit denial letters mean—specifically the factors listed as the reason for denial and their individual impact on the credit application, and how these factors are triggered by Plaintiff's credit report. This is clearly evident in this case, as many of the Defendants claim that they were not the cause of the denial. Further, these bespoke, industry actions are not within the common knowledge of the jury. The citation to *Nelson v. Experian Info. Sols, Inc.*, 2024 U.S. Dist. LEXIS 114455 (D.S.C. June 27, 2024) is inapposite. Hollon is not merely "reciting" Plaintiff's damages, Hollon is *explaining* how Defendants *caused* the credit damage, an area outside of Plaintiff's—and the jury's—knowledge. *See Arriaga v. Logix Fed. Credit Union*, 2022 U.S. Dist. LEXIS 140287, at *4 (C.D. Cal. Apr. 22, 2022) (expert had "significant experience reading credit reports and denial letters" and has worked closely with lenders to determine what criteria they require).

In sum, it is clear that Hollon's experience establishes, by a preponderance of the evidence, a sufficient basis for his opinions. Indeed, the Court found him to be qualified as a credit industry expert. Under the law, he does not need to cite to reports, research, or anything else other than his

9

experience. And indeed, Hollon directly articulated that the entirety of his opinions come from this experience in the field which is clearly and logically the basis for his opinions on how other entities should handle similar disputes to those he's seen repeatedly over decades in the industry.

## CONCLUSION

Based on the above, Plaintiff's motion for reconsideration should be granted.

Dated: June 2, 2026.

Respectfully Submitted,

/s/ Nicholas Linker
Nicholas Linker, Esq.
Daniel Zemel, Esq.
Zemel Law LLC
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 2d day of June, 2026 a true and correct copy of the foregoing document was sent to all counsel of record via the Court's ECF system.

s/ Nicholas Linker
Nicholas Linker, Esq.

10